# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **NEBRASKA DATA CENTERS, LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**LEO KHAYET,**<br><br>Defendant. | 8:17CV369<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Preliminary Injunction, ECF No. 21, and Motion to Enjoin, ECF No. 69, filed by Plaintiff Nebraska Data Centers, LLC (NDC). Also before the Court are various Motions, ECF Nos. 65, 66, 67, 68, and 72, filed by Defendant Leo Khayet. For the reasons stated below, NDC's Motion for Preliminary Injunction will be granted in part, and its Motion to Enjoin will be granted. Khayet will be permitted to refile his Motion to Dismiss, ECF No. 68, in compliance with the Court's local rules, or file another responsive pleading to the Amended Complaint on or before February 2, 2018.

## BACKGROUND

NDC, along with all of its "affiliates and Principals," entered into a Consulting Agreement with Khayet on August 8, 2017. Consulting Agreement, ECF No. 2, Page ID 6. The Consulting Agreement provided that

> NDC has asked [Khayet] to introduce or re-introduce [NDC] to targeted family offices, high net worth individuals, strategic real estate investors and other capital groups and/or individuals identified in Appendix A[1] that have the financial ability to purchase the assets of NDC [ ]: including all tangible and intangible assets.

---

[1] Consulting Agreement, ECF No. 2, Page ID 9.

*Id.* Under the Consulting Agreement, Khayet was entitled to compensation only if NDC consummated a sale with one of the parties listed in Appendix A within thirty-six months of execution. *Id.* Khayet was not authorized to act as an agent or negotiate on NDC's behalf and NDC agreed that it would not "execute transactions with any [parties identified in Appendix A], without [Khayet's permission]." *Id.*

Before the Parties entered into the Consulting Agreement, Nebraska Colocation Centers, LLC, and Timber Ventures, LLC,[2] entered into a separate Mutual Confidentiality and Nondisclosure Agreement (Confidentiality Agreement). ECF No. 12, Page ID 34. Khayet was the president of Timber Ventures, and Nebraska Colocation Centers was a trade name registered to NDC. The purpose of the Confidentiality Agreement was to facilitate execution of the Consulting Agreement. *Id.*

Shortly after the Parties entered into the Consulting Agreement, their relationship deteriorated. NDC became concerned that Khayet would be unable to find a satisfactory buyer, and NDC decided to reduce its communications with Khayet. On October 4, 2017, NDC sent Khayet a letter notifying him that NDC was terminating the Consulting Agreement and ordering Khayet to cease all activity in connection with the Consulting Agreement. Termination Letter, ECF No. 2, Page ID 11-12. NDC cited Khayet's apparent inability to find an acceptable buyer and persistent, inappropriate communications with NDC's officers and owners, as the basis for its decision to

---

[2] The evidence reflects that Timber Ventures, LLC, was organized under Kansas state law, but "forfeited" its active status for failure to maintain or file appropriate records with the Kansas Secretary of State's office. ECF No. 22-2, Page ID 127.

terminate. Pl.'s Br. Mot. Prelim. Inj., ECF No. 22, Page ID 99. The Consulting Agreement did not include a clause or provision addressing termination by either party.

After Khayet received the termination letter, he insisted he had a right to attempt to perform under the Consulting Agreement. He made several attempts to communicate with Joel Mogy, a trustee for the Ralph and Barbara Edwards Insurance Trust, which is a member of NDC. Mogy Declaration, ECF No. 22-3. He also made several attempts to communicate with officers of NDC. Cushing Declaration, ECF No. 22-1; E-mail Correspondence, ECF No. 22-2, Page ID 138. And he reached out to an architect that NDC retained to prepare for a potential sale of the company. Knott Declaration, ECF No. 25-1, Page ID 170. NDC alleges the foregoing communications were persistent, inappropriate, and aimed at decreasing NDC's value as well as disrupting NDC's own efforts to consummate a sale of its assets. NDC was also concerned when it learned Khayet was interested in purchasing NDC's assets. NDC concluded "it is reasonable to assume Khayet has been contacting potential third-party buyers of NDC in an effort to prevent NDC from completing a sale of its business assets." Pl.'s Br. Mot. Prelim. Inj., ECF No. 22, Page ID 101. NDC further asserts "Khayet may also be disclosing confidential information about NDC . . . ." *Id.*

On October 5, 2017, NDC filed the Complaint, ECF No. 1, requesting a declaratory judgment to determine the Parties' rights and obligations under the Consulting Agreement. Specifically, the Complaint sought a declaration that

> (a) no amount is due or owing to Defendant under the Agreement; (b) [NDC] has complied with all terms and conditions of the Agreement and has not breached any of the terms and conditions of the Agreement; and (c) the Agreement is terminated, except with respect to those terms and conditions which survive the termination of the Agreement.

3

Complaint ¶ 15, ECF No. 1, Page ID 3. On October 18, 2017, Khayet told NDC's counsel that he did not accept NDC's termination of the Consulting Agreement and, citing his perceived rights under the Consulting Agreement, he asserted he will not stop seeking potential buyers. ECF No. 22-2, Page ID 129. On November 2, 2017, NDC filed its Amended Complaint, ECF No. 11, adding claims against Khayet for tortious interference with a business relationship or expectancy; fraud; negligent misrepresentation; breach of contract; violations of the Junkin Act, Neb. Rev. Stat. § 59-805; unfair competition; violations of the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302 et seq.; and trademark infringement. Am. Comp., ECF No. 11. The Amended Complaint also requested injunctive relief and, on November 17, 2017, NDC filed its Motion for Preliminary Injunction, ECF No. 21, that specifically asked the Court to enjoin Khayet and any of his agents and representatives from engaging in the following conduct:

> (1) discussing contacting, or otherwise communicating with any entity or person (other than Khayet's legal counsel) any matter referencing, relating to, or associated with the Consulting Agreement; (2) holding Khayet (or any of Khayet's agents, affiliates or representatives) out as an agent, affiliate or otherwise as a person authorized to transact business on behalf, of NDC; (3) contacting or otherwise communicating with regard to any matters related to the Consulting Agreement with: (i) NDC's customers, vendors, service providers and business partners known to Khayet or disclosed to Khayet under the terms of the Consulting Agreement or Confidentiality Agreement; (ii) NDC; (iii) NDC'[s] officers: Mr. Jerry Appel, Mr. Martin S. Appel and Mr. Todd Cushing; (iv) NDC's employees; (v) NDC's owners: the Ralph and Barbara Edwards Insurance Trust, the Christine Alison Edwards Tandy Trust, the Gary Livingstone Lenhart Trust, and the Lauren Avery Edwards Lenhart Trust (the "Trusts"); (vi) the trustees of NDC's owners, Mr. Martin S Appel and Mr. Joel Mogy (the "Trustees"); and (vii) NDC's affiliate: American Nebraska Limited Partnership (the "Affiliate") and its owners, the Trusts, and their respective

> Trustees; and (4) taking any action intended to harm NDC, its officers, its employees or business operations, the Trusts, the Trustees or the Affiliate.

Pl.'s Br. Mot. Prelim. Inj., ECF No. 112-13.

The Court held a hearing on the Motion on December 7, 2017, and an attorney, Benjamin Maxell, appeared on behalf of Khayet.[3] The Court heard oral arguments from counsel and set deadlines for supplemental briefing; Khayet was given until December 29, 2017, to submit a brief in opposition to the Motion, and NDC was to submit any reply brief on or before January 12, 2017. ECF No. 33. The Court also requested that Mr. Maxell instruct Khayet not to contact NDC or any of its officers, principals, vendors, or clients; and that any such contact was to be made through counsel. On December 11, 2017, Khayet moved for an extension of time to respond to the Amended Complaint and the Court ordered that he respond on or before December 26, 2017. ECF No. 35.

On December 19, 2017, Mr. Maxell moved to withdraw as counsel for Khayet, ECF No. 39, and NDC filed a Motion for Contempt of Court, ECF No. 40, because Khayet continued to attempt to communicate with NDC principals and officers. The Court held another hearing on December 21, 2017, regarding the two newest motions. The Court permitted Mr. Maxell to withdraw; denied the Motion for Contempt of Court; and issued a Temporary Restraining Order. TRO, ECF No. 53. On December 26, 2017, Khayet again moved for an extension of time to respond to the Amended Complaint, and the Court ordered that he submit a response on or before December 29, 2017. ECF No. 54. The Court also reminded Khayet that he was permitted, but not

---

[3] Khayet had been proceeding pro se until Mr. Maxell appeared at the hearing on the Motion for Preliminary Injunction. Mr. Maxell submitted his written notice of appearance on December 12, 2017. ECF No. 36.

5

required, to submit a brief in opposition to the pending Motion for Preliminary Injunction on or before December 29, 2017.

Khayet filed a motion to dismiss the Amended Complaint, ECF No. 61, which failed to comply with the Court local rule, NECivR 7.1(a)(1)(A). In that motion, Khayet argued that the Court has not permitted him enough time to obtain counsel; that the Court lacks personal jurisdiction over him; that venue is improper; and that NDC's claims are "not adequately pled." *Id.* Khayet did not file a timely brief in opposition to the Motion for Preliminary Injunction.[4]

The Court has denied Khayet's repeated motions for additional extensions of time, and it denied his Motion to Dismiss Plaintiff's Amended Complaint in Lieu of Answer for failure to comply with the Court's local rules. ECF No. 63. Khayet has resubmitted a Motion to Dismiss along with a Motion for leave to submit it out of time. ECF Nos. 65-68. The resubmitted Motion to Dismiss also fails to comply with the Court's local rule NECivR 7.1(a)(1)(A).. Khayet also filed a complaint against Todd Cushing, the president of NDC, in the United States District Court for the District of Kansas. *Khayet v. Cushing*, 2:17cv2624 (D. Kan. October 26, 2017).

## DISCUSSION

**I. Motion for Preliminary Injunction**

---

[4] The Court previously dismissed Khayet's Motion to Dismiss Preliminary Injunction, ECF No. 62, because it is not a cognizable motion. ECF No. 63. Although it was filed as a Motion to Dismiss Preliminary Injunction, Khayet titled the document, itself, "Answer of Defendant to Plaintiff's Motion for Preliminary Injunction." ECF No. 62. However, responsive pleadings to motions for preliminary injunctions are not contemplated by the Federal Rules of Civil Procedure. As such, the Court will construe Khayet's filing at ECF No. 62 as a brief submitted in response to NDC's Motion for Preliminary Injunction. The Court previously instructed Khayet to file his response no later than December 29, 2017, the response was not filed until January 3, 2018. His response is, therefore, untimely.

6

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to issue a preliminary injunction. Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). "The purpose of a preliminary injunction is to 'preserve the relative positions of the parties until a trial on the merits can be held.'" *Paisley Park Ents., Inc. v. Boxill*, 253 F. Supp. 3d 1037, 1043 (D. Minn. 2017) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

**A. Likelihood of Success on the Merits**

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)). With respect to this factor, it is not necessary for the movant to prove they are more likely than not to prevail, the movant "need only show a reasonable probability of success, that is, a fair chance of prevailing" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Dataphase*, 640 F.2d at 113. NDC's Amended Complaint enumerates nine separate claims, but it is only necessary

to demonstrate a likelihood of success on one of its claims. *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 759 n.1 (9th Cir. 2014); *accord Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1201 (Fed. Cir. 2007).

NDC seeks three declarations from the Court: (1) "no amount is due or owing to [Khayet] under the Agreement;" (2) NDC has complied with all the terms and conditions of, and has not breached, the Agreement; and (3) "the Agreement is terminated," with the exception of the terms that survive termination. Am. Comp. ¶ 15, ECF No. 11, Page ID 24.

In Nebraska, "[a] party to an executory contract has the right to rescind the contract, and terminate it wholly, without the consent of the other party, who is in no fault[.]" *Faught v. Platte Valley Pub. Power & Irrigation Dist.*, 51 N.W.2d 253, 158-59 (Neb. 1952) (quoting *Hale v. Hess*, 46 N.W. 261 (Neb. 1890). The party who terminates an executory contract, however, may be liable to the other contractual party for the damages they "may have sustained, or compensation [they] may have earned, by reason of the rescission." *Id*.

The Parties entered into the Consulting Agreement on August 8, 2017. The Consulting Agreement did not specify a duration, but did provide that Khayet would be compensated if a sale to one of the designated parties in Appendix A was consummated within thirty-six months. Consulting Agreement, ECF No. 2, Page ID 6. NDC sent, and Khayet received, a termination letter, dated October 4, 2017, that stated NDC "hereby terminates the Agreement with immediate effect as of the date of this letter." Termination Agreement, ECF No. 2, Page ID 11. Thus, with respect to NDC's

request for a declaration that the Consulting Agreement is terminated, NDC has demonstrated a likelihood of success. *See Faught*, 51 N.W.2d at 158-59.

NDC has also demonstrated a likelihood of success with respect to its request for a declaration that "no amount is due or owing to [Khayet] under the Agreement[.]" Am. Comp., ECF No. 11, Page ID 24. NDC has not consummated a sale of its assets; it has not contracted for such a sale; and it is likely the Consulting Agreement was terminated on October 4, 2017. NDC has stated it does not intend to sell its assets to any of the parties listed in Appendix A, nor any other party proffered by Khayet. At the hearing on December 21, 2017, the Court noted it was "apparent that the relationship between [Khayet] and [NDC] has deteriorated to the point that it's unlikely that any sale is going to take place through [Khayet's] efforts." ECF No. 60, Page ID 347. Because the Consulting Agreement was likely terminated, and because NDC does not wish to sell its assets to any party Khayet locates, NDC is likely to succeed on its claim for a declaration that Khayet is owed nothing under the terms of the agreement.[5]

Although Khayet has provided no evidence or argument that NDC breached the Consulting Agreement or otherwise failed to comply with its terms and conditions, Khayet has not yet filed a responsive pleading. It would be premature for the Court to speculate about the likelihood of NDC's success on the merits of any claims of breach that may be presented by Khayet in a future responsive pleading. Accordingly, NDC has not yet demonstrated a likelihood of success on the merits with respect to its

---

[5] The Court notes that Khayet may claim damages or deprived compensation as a remedy for NDC's decision to terminate an executory contract *under Nebraska law*. *See Faught*, 51 N.W.2d at 158-59. Nevertheless, NDC has demonstrated that Khayet will likely not be entitled to compensation *under the terms of the Consulting Agreement*. Thus far, Khayet has not answered the Amended Complaint nor has he asserted any counterclaims against NDC.

9

request for a declaration that NDC has not breached the Agreement. Am. Comp. ¶ 15, ECF No. 11, Page ID 6.

Because NDC has demonstrated a likelihood of success on two of its three claims for a declaratory judgment, the Court finds that this factor weighs in favor of granting NDC's Motion for Preliminary Injunction, in part.

### B. Threat of Irreparable Harm

"It is well established that '[i]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.'" *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2003)). Several courts have held that a disclosure of confidential information may constitute irreparable harm. *Reg Seneca, LLC v. Harden*, 938 F. Supp. 2d 852, 860-61 (S.D. Iowa 2013); *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 205-06 (N.D.N.Y. 2011); *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010). "Loss of intangible assets such as reputation and goodwill can [also] constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). A mere possibility of irreparable harm, however, is insufficient to justify a preliminary injunction. The movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).

NDC argues that unless Khayet is enjoined from continuing his efforts to find a buyer for NDC's assets, and from disclosing NDC's confidential information, he will

damage NDC's reputation and goodwill. The Court finds NDC is likely to suffer irreparable harm absent a preliminary injunction.

Despite the termination letter, and NDC's repeated requests that Khayet stop soliciting offers to purchase NDC or its assets, he has continued his efforts to find a buyer and has said he will persist in doing so. ECF No. 22-2, Page ID 130. Khayet's continued communications with third parties, representing himself as someone with authority to negotiate or facilitate a sale of NDC or its assets, creates a substantial risk of a breach of the Confidentiality Agreement. The Parties agreed that "money damages would be inadequate compensation for breach of the [Confidentiality] Agreement."[6] Confidentiality Agreement, ECF No. 12, Page ID 36. Absent the issuance of a preliminary injunction, NDC is likely to suffer irreparable harm. *See Harden*, 938 F. Supp. 2d at 861 (finding irreparable harm where "there is a real threat of inevitable disclosure" of confidential information and parties had previously agreed that disclosure would result in irreparable harm); *see also Frisch*, 795 F. Supp. 2d at 205-06 ("confidentiality provision in an agreement stating that serious irreparable harm would flow from its breach buttresses a conclusion of irreparable injury") (citing *Innoviant Pharmacy, Inc. v. Morganstern*, 390 F. Supp. 2d 179, 189 (N.D.N.Y. 2005). Accordingly, the "threat of irreparable harm" factor favors issuance of a preliminary injunction.

### C. Balance of the Harms

The primary question when issuing a preliminary injunction is whether the "balance of equities so favors the movant that justice requires the court to intervene to

---

[6] A similar provision was also included in the Consulting Agreement. ECF No. 2, Page ID 7.

preserve the status quo until the merits are determined." *Dataphase,* 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

As noted above, the likely harm to NDC if a preliminary injunction is *not* granted is the disclosure of its confidential information and damage to its goodwill, which could cause irreparable injury to the value of the company. If a preliminary injunction is granted, Khayet will be precluded from performing under the Consulting Agreement. However, it is likely NDC successfully terminated the Consulting Agreement on October 4, 2017. Therefore, it is also likely Khayet no longer has any contractual rights under the Consulting Agreement. The relationship between NDC and Khayet has deteriorated to the point that NDC no longer wants to associate with Khayet, nor sell its assets to any party located by Khayet, and nothing in the Consulting Agreement required it to do so. Pl.'s Br., ECF No. 22, Page ID 99. Thus, even if the Court did not issue a preliminary injunction, it is highly unlikely Khayet's efforts would result in a sale entitling him to compensation under the terms of the Consulting Agreement. As such, a preliminary injunction will not impair any contractual rights Khayet may have, nor would it be likely to harm him economically. Accordingly, the "balance of the harms" factor favors the issuance of a preliminary injunction.

### D. Public Interest

The Court must also "consider[ ] whether the public interest would be served by granting the movant's motion for injunctive relief." *Harden*, 938 F. Supp. 2d at 861 (citing *Dataphase*, 640 F.2d at 113). This case involves a contract dispute between private parties, which is of little interest to the general public. Thus, the Court finds that the issuance of a preliminary injunction will neither serve nor frustrate public interests. *Harden*, 938 F. Supp. 2d at 862 (finding "the public interest weighs little in favor of either party" where the case was "largely a private dispute, governed by contract law"); *see also Waldron v. George Weston Bakeries, Inc.*, 575 F. Supp. 2d 271 (D. Maine 2008) ([T]his case is a contract dispute between private parties and as such there is no public interest that is affected by the Court's decision to grant or deny injunctive relief.")

While the public generally has an "interest in protecting contractual rights[,]" *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1145 (8th Cir. 2007), the Court has found that it is likely NDC terminated the Consulting Agreement on October 4, 2017. The termination letter stated NDC would compensate Khayet under the terms of the Consulting Agreement in the event NDC sold its assets to any of the parties listed on Appendix A, and the Court has permitted Khayet to continue to contact the parties listed on Appendix A and will permit him to communicate with two other parties he introduced to NDC, Global Horizons Holdings LLC and Grandbridge Real Estate Capital.[7]

---

[7] At the hearing on December 21, 2017, Khayet represented to the Court that Appendix A had been appropriately updated with additional parties under the terms of the Consulting Agreement. ECF No. 60, Page ID 345. The Court informed Khayet that he may substantiate that assertion in his response brief along with evidence. Khayet did not submit an updated or amended Appendix A. Rather, he submitted two nondisclosure agreements between NDC and two other entities that he, ostensibly, introduced to NDC. ECF No. 58-1, Page ID 294-95. He also submitted his email correspondence with Todd Cushing, the president of NDC, where Cushing told Khayet he was not interested in receiving offers from Tom Jackson on behalf of "GI Partners." *Id.* It appears from Khayet's Declaration that Tom Jackson is no longer associated with GI Partners. Although there is no evidence of an updated or amended

Accordingly, a preliminary injunction will not impair any contractual rights Khayet may have, and will not be detrimental to the public's interest in the enforcement of contracts.

### E. Bond

"Under Federal Rule of Civil Procedure 65(c), '[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quoting *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F. 2d 949, 951 (8th Cir. 1976)). "[T]he 'amount of the bond rests with the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion.'" *Id*.

Khayet argues a bond should be set in "excess of $2,000,000," ECF No. 62, Page ID 358, while NDC argues it should be set in the amount of $100. The preliminary injunction does not prevent Khayet from contacting the persons or entities listed on Appendix A. Nor does it preclude him from communicating with the two more parties he introduced to NDC prior to the termination of the Consulting Agreement, Global Horizons Holdings LLC or Grandbridge Real Estate Capital. As the Court has explained, the Consulting Agreement does not require NDC to sell its assets to any party Khayet locates, and NDC has said it is not interested in selling its assets to the persons or entities listed on Appendix A nor any other parties Khayet has located. Regardless of whether a preliminary injunction is issued, it is highly unlikely NDC will

---

Appendix A, the Court will, nevertheless, permit Khayet to contact and communicate with the two entities that have executed nondisclosure agreements with NDC. Accordingly, Khayet may contact and communicate with Global Horizons Holdings LLC, and Grandbridge Real Estate Capital. ECF No. 58-1, Page ID 294.

consummate a sale with any parties proffered by Khayet. Thus, the preliminary injunction does not threaten to damage Khayet or impose any costs upon him. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003) (deciding a Rule 65(c) bond was not required where the defendant failed to provide evidence of any damages that may result from a preliminary injunction); *see also Dordt Coll. v. Sebelius*, 22 F. Supp. 3d 934 (N.D. Iowa 2014), *aff'd*, 801 F.3d 946 (8th Cir. 2015). Accordingly, pursuant to Rule 65(c) and NDC's request, it will require NDC to post a bond in the amount of $100.

## II. Motion to Enjoin

In its Motion to Enjoin, ECF No. 69, NDC argues that, under the first-to-file rule and the All-Writs Act[8], the Court should enjoin Khayet from prosecuting a lawsuit he initiated in the United States District Court for the District of Kansas after NDC initiated this action.[9]

"The discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court is firmly established." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993); *accord Chicago Pneumatic Tool Co. v Hughes Tool Co.*, 180 F.2d 97, 101 (10th Cir. 1950). However, "orders enjoining a party from proceeding with a duplicative, second-filed lawsuit in another forum, are not subject to the *Dataphase* standards for injunctive relief." *Nw. Airlines, Inc.*, 989 F.2d at 1004. "The well-

---

[8] The All Writs Act provides "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

[9] *Khayet v. Cushing et al.*, 2:17cv2624 (D. Kan. October 26, 2017).

15

established rule is that in cases of concurrent jurisdiction,[10] 'the first court in which jurisdiction attaches has priority to consider the case.'" *Id.* (quoting *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)). "This rule is not applied in a 'rigid, mechanical, or inflexible' fashion, but 'in a manner best serving the interests of justice.'" *Mckinney Drilling Co., LLC v. Liberty Mut. Ins. Co.*, Case No. 5:16-CV-05078, 2016 WL 3349326, at *1 (W.D. Ark. June 15, 2016) (quoting *Nw. Airlines, Inc.*, 989 F.2d at 1005).

Before the first-to-file rule is applied, courts consider whether the first and second-filed actions constitute "parallel litigation." *Mckinney Drilling*, 2016 WL 3349326, at *1 (citing *Orthmann*, 765 F.2d 119, 121 (8th Cir. 1985)). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Mckinney Drilling*, 2016 WL 3349326, at *1 (quoting *Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 968 (8th Cir. 2013)).

The parties and issues in Khayet's second-filed action in the District of Kansas are substantially the same as those in this first-filed action. *See* Am. Comp., ECF No. 71-2, Page ID 424. The claims asserted by Khayet's Amended Complaint in the District of Kansas are against Todd Cushing, the president of NDC, and the claims arise out of the Parties' conduct and obligations with respect to the Consulting Agreement as well

---

[10] Although Khayet argues this Court lacks personal jurisdiction over him in his Motion to Dismiss, the Court is satisfied that it has personal jurisdiction. Khayet had counsel appear on his behalf at the preliminary injunction hearing, he personally appeared at the withdrawal and contempt hearing, and he filed several motions, ECF Nos. 47-52 & 55-57, before ever raising an objection to this Court's exercise of personal jurisdiction over him. Therefore, through his conduct and appearances, Khayet waived his defense under Federal Rule of Civil Procedure 12(b)(2). *See TLC Vision (USA) Corp. v. Freeman*, No. 4:12CV01855ERW, 2013 WL 230254, at *4-5 (E.D. Mo. Jan. 22, 2013) (quoting *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) ("[T]he personal jurisdiction defense may also be 'lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct.'").

16

as the Confidentiality Agreement.  *See id.* at 436-37 (asserting claims for "Fraudulent Inducement (Consulting Agreement)" and "Fraudulent Inducement (NDAs)").  The fact that the parties are not identical in both actions does not preclude the application of the first-to-file rule.  *See Mckinney Drilling*, 2016 WL 3349326, *at 1.  Todd Cushing is the president of NDC and Khayet's claims against him arise out of the same set of facts as NDC's claims against Khayet in this action.  Thus, Todd Cushing and NDC's interests in both cases are aligned, and Khayet is the only adversarial party to each of them.  Therefore, this case and the second-filed case initiated by Khayet in the District of Kansas constitute parallel litigation.

Accordingly, the Court finds, pursuant to the first-to-file rule, that it is in the interests of justice to enjoin Khayet from simultaneously pursuing duplicative litigation in the District of Kansas.  As noted above, the Court will permit Khayet an extension of time to file a responsive pleading to NDC's Amended Complaint, and his pleading may include any counterclaims against NDC.

### III.  Khayet's Motions

The Court will grant Khayet's Motion to Strike, ECF No. 66.  Accordingly, his previous Motion for Leave, ECF No. 65, is stricken.  In his subsequent Motion for Leave, ECF No. 67, Khayet asks the Court to grant him leave to submit his Motion to Dismiss, ECF No. 68, out of time.  The Court will deny the Motion at ECF Nos. 67, and direct the Clerk to terminate the Motion to Dismiss at ECF No. 68, but will permit Khayet to file a pleading in response to the Amended Complaint, in compliance with the Court's local rules, on or before February 2, 2018.  Finally, Khayet's "Motion for Clarification and Written Explanation of Order," ECF No. 72, will be denied.

## CONCLUSION

NDC's Motion for Preliminary Injunction is granted, in part, as ordered below, and its Motion to Enjoin is granted. Pursuant to Federal Rule of Civil Procedure 65(c) and its own request, NDC will post a bond in the amount of $100. Khayet's Motion for Leave and Motion to Dismiss, ECF Nos. 67 and 68, are denied, and Khayet is granted leave to file a pleading in response to NDC's Amended Complaint, ECF No. 11, on or before February 2, 2018.

Accordingly,

IT IS ORDERED:

1. The Motion for Preliminary Injunction, ECF No. 21, filed by Plaintiff Nebraska Data Centers, LLC (NDC), is granted, in part, as follows:

    a. Defendant Leo Khayet is precluded from contacting the owners or principals of NDC, including the trustees of the following trusts and their immediate family members: the Ralph and Barbara Edwards Insurance Trust; the Christine Alison Edwards Tandy Trust; the Gary Livingstone Lenhart Trust; and the Lauren Avery Edwards Lenhart Trust;

    b. Defendant Leo Khayet is precluded from contacting the employees and officers of NDC;

    c. Defendant Leo Khayet is precluded from contacting NDC's affiliate, American Nebraska Limited Partnership;

    d. Defendant Leo Khayet may communicate with the persons or entities listed on Appendix A of the Consulting Agreement, ECF No. 2, Page ID 9, as well as Global Horizons Holdings LLC and Grandbridge Real Estate Capital, but he is precluded from contacting any other persons or entities for the purpose of transacting any business or potential business related to NDC;

    The Motion is otherwise denied;

2. Pursuant to Federal Rule of Civil Procedure 65(c), NDC will post a bond in the amount of $100;

3. The Motion to Enjoin, ECF No. 69, filed by Plaintiff NDC, is granted;

4. Defendant Leo Khayet is enjoined from prosecuting the lawsuit he filed against Todd Cushing in the United States District Court for the District of Kansas titled *Khayet v. Cushing*, 2:17cv2624 (D. Kan. October 26, 2017);

5. The Motion to Strike, ECF No. 66, filed by Defendant Leo Khayet, is granted;

6. The Motion for Leave, ECF No. 65, filed by Defendant Leo Khayet, is stricken;

7. The Motion for Leave, ECF No. 67, filed by Defendant Leo Khayet, is denied;

8. The Clerk will terminate the Motion to Dismiss pending at ECF No. 68;

9. The Motion for Clarification and Written Explanation of Order, ECF No. 72, is denied; and

9. Any response by Defendant Leo Khayet to NDC's Amended Complaint must be filed on or before February 2, 2018.

Dated this 26th day of January, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge