# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **NEBRASKA DATA CENTERS, LLC,** | |
| **Plaintiff,** | **8:17CV369** |
| **vs.** | |
| **LEO KHAYET,** | **MEMORANDUM AND ORDER** |
| **Defendant.** | |

This matter is before the Court on the Motion to Dismiss, ECF No. 78, filed by Defendant Leo Khayet. Also before the Court are the Motion for Sanctions, ECF No. 94, filed by Plaintiff Nebraska Data Centers, LLC (NDC), the Motion to Strike Order, ECF No. 143, filed by Khayet, and the Objection to Order, ECF No. 147, filed by Khayet. For the reasons stated below, the Motion to Dismiss will be granted, in part.; the Motion for Sanctions will be denied, without prejudice and subject reassertion; and the Motion to Strike Order and the Objection to Order will be denied.

## BACKGROUND

### I. Factual Background

The following facts are those alleged in the Amended Complaint, ECF No. 11, and assumed true for purposes of the pending Motion to Dismiss.

On August 8, 2017, Khayet and NDC entered into a Consulting Agreement, ECF No. 2, which provided:

> NDC has asked [Khayet] to introduce or re-introduce the Company to targeted family offices, high net worth individuals, strategic real estate investors and other capital groups and/or individuals identified in Appendix A that have the financial ability to purchase the assets of NDC [ ]: including all tangible and intangible assets.

Am. Comp. ¶ 6, ECF No. 11, Page ID 23 (citing Consulting Agreement, ECF No. 2). The terms of the Consulting Agreement also provided that "[i]f NDC or any affiliate[ ] completes any transaction with any party listed in Appendix A within thirty-six [ ] months after the date of this Agreement" Khayet shall be paid two percent "of the purchase and/or sale of NDC assets in whole or in part . . . ." Consulting Agreement § 2.a., ECF No. 2, Page ID 6. Neither NDC nor any of its assets were sold.

On October 4, 2017, NDC sent Khayet a letter that stated NDC "hereby terminates the Consulting Agreement with immediate effect as of the date of this letter." Termination Letter, ECF No. 2, Page ID 11. The next day, Khayet disputed NDC's asserted termination and, despite NDC's repeated requests to stop, he has since continued to contact individuals and business entities interested in NDC's assets under his perceived authority to perform the Consulting Agreement. NDC alleges that Khayet's purpose is to "embarrass, harass and interfere with [its] business and . . . relationships . . . ." Am. Comp. ¶ 22, ECF No. 11, Page ID 25. NDC also alleges that Khayet has been making efforts to buy NDC's assets himself or with a group of other buyers.

On December 1, 2016, prior to executing the Consulting Agreement, NDC and Timber Ventures, LLC, of which Khayet is the President, also entered into a Mutual Confidentiality and Nondisclosure Agreement (Confidentiality Agreement), ECF No. 12. The parties entered into the Confidentiality Agreement "for the purpose of determining whether [NDC] would engage [Khayet]." Am. Comp. ¶ 50, ECF No. 11, Page ID 27.

NDC alleges Khayet was a party to the Confidentiality Agreement and that he breached it by disclosing NDC's confidential information without its prior authorization.

## II. Procedural Background

On October 5, 2017, NDC filed a Complaint for Declaratory Judgment, ECF No. 1, against Khayet, seeking a declaration that the Consulting Agreement was terminated and that Khayet was owed no compensation. On November 2, 2017, NDC filed the Amended Complaint, ECF No. 11, which sought a similar declaratory judgment and asserted the following claims: (1) tortious interference with a business relationship or expectancy; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) breach of contract; (5) a violation of the Junkin Act, Neb. Rev. Stat. § 59-805; (6) unfair competition; (7) a violation of the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-302; (8) common-law trademark infringement; and (9) injunctive relief. NDC also sought a preliminary injunction through the Amended Complaint, and on November 17, 2017, it moved for a preliminary injunction, ECF No. 21.

On December 7, 2017, a hearing on the Motion for Preliminary Injunction was held and an attorney, Benjamin Maxell, appeared on Khayet's behalf to oppose the Motion. The Court allowed Khayet until December 29, 2017, to submit a response brief and any supporting evidence. On December 19, 2017, Maxell moved to withdraw as counsel for Khayet and the Court held a hearing on that motion as well as on NDC's Motion for Contempt of Court Order, ECF No. 40. Khayet personally appeared at the December 19, 2017, hearing and the Court permitted Maxell to withdraw his representation. Khayet has proceeded pro se since Maxell's withdrawal.

After denying his first two motions to dismiss, ECF Nos. 61 and 68, for failing to comply with the Court's local rule NECivR. 7.1(a)(1)(A), the Court permitted Khayet to submit a responsive pleading to the Amended Complaint on or before February 2, 2018. *See* Text Order, ECF No. 63; *see also* Order on Mot. Prelim. Inj., ECF No. 76, Page ID 519 (granting NDC's request for a preliminary injunction, in part). Khayet then submitted the pending Motion to Dismiss, ECF No. 78, in compliance with the Court's local rules. Prior to submitting the pending Motion to Dismiss, Khayet submitted several motions and other filings seeking various forms of relief. ECF Nos. 19, 49, 51, 55-9, 62, 67, 72. Since filing the pending Motion to Dismiss, Khayet has continued to submit motions and other filings also requesting various forms of relief. ECF Nos. 81-2, 87, 93, 98, 119, 133, 135, 140, 143, 147.

In his Motion to Dismiss, Khayet asserts the Court lacks personal jurisdiction over him, that the District of Nebraska is an improper venue, and that NDC's Amended Complaint should be dismissed in its entirety because it fails to state a claim upon which relief can be granted. He also asserts the Court lacks subject-matter jurisdiction because NDC failed to demonstrate that the amount in controversy exceeds $75,000.

## STANDARD OF REVIEW[1]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell*

---

[1] Because the Court finds that Khayet submitted to personal jurisdiction and waived his improper venue defense, it will not recite the standard under which Rule 12(b)(2) and (3) are reviewed.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v.*

*Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

By his conduct and appearances, Khayet waived his defenses under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue, and NDC sufficiently pled that the amount in controversy exceeds $75,000. Thus, the Court will not dismiss this case under Fed. R. Civ. P. 12(b)(1), (2), or (3). The Court will, however, dismiss the following claims under Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted: (1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) breach of the Confidentiality Agreement against Khayet, (4) violation of § 59-805 of the Junkin Act, (5) unfair competition under Nebraska law, and (6) common-law trademark infringement under Nebraska law. NDC's Motion for Sanctions, Khayet's Motion to Strike Order, and Khayet's Objection to Order will be denied.

### I. Personal Jurisdiction and Venue

Rule 12 "sets only the outer limits of waiver; it does not preclude waiver by implication." *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (quoting *Marquest Med. Prods. v. EMDE Corp.*, 496 F. Supp. 1242, 1245 n.1 (D. Colo. 1980)). Defenses under 12(b)(2) and 12(b)(3) "may be lost by failure to assert [them] seasonably, by formal submission in a cause, or by submission through conduct." *First Bank Bus. Capital, Inc. v. Agriprocessors, Inc.*, 602 F. Supp. 2d 1076, 1090 (N.D. Iowa 2009) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)); *see also Yeldell*, 913 F.2d at 539; *TLC Vision (USA) Corp. v. Freeman*, No. 4:12CV01855 ERW, 2013 WL

2181267, at *6 (E.D. Mo. May 20, 2013) (finding "the privileges of these 12(b)(2)-(3) defenses were lost by 'submission through conduct'") (quoting *Neirbo*, 308 U.S. at 168).

Khayet raised his defenses under 12(b)(2) and 12(b)(3) for the first time in his initial Motion to Dismiss. ECF No. 61. However, prior to raising these defenses, Maxell appeared on Khayet's behalf at the preliminary injunction hearing and Khayet personally appeared at the hearing on Maxell's motion to withdraw. Neither Maxell nor Khayet indicated they were making a special appearance; they did not object to the Court's exercise of personal jurisdiction; and they did not argue that this District was an improper venue. Khayet also submitted the following motions with the Court seeking various forms of relief: (1) Motion to Compel, ECF No. 19 (requesting that the Court order counsel to provide evidentiary proof of his authority to represent NDC); (2) Motion for Extension of Time, ECF No. 49 (requesting response deadline extensions and an order vacating the Court's prior orders); (3) Motion for Sanctions, ECF No. 51 (requesting "compensatory and coercive sanctions" against NDC's counsel for violating Fed. R. Evid. 408); (4) Motions to Clarify, ECF Nos. 55-7 (requesting a written order clarifying the Court's reason for denying Khayet's motion to sanction NDC's counsel for violating Fed. R. Evid. 408); (5) Motion to Amend Order, ECF No. 58 (requesting that the Court amend a prior order); and (6) Motion to Reconsider, ECF No. 59 (requesting that the Court reconsider granting Khayet's motion at ECF No. 49). Based on these appearances and motions, Khayet submitted to the Court's personal jurisdiction and waived his improper venue defense.

Khayet's filings subsequent to raising his 12(b)(2) and 12(b)(3) defenses also support the Court's finding that he may no longer assert these defenses. *See Columbia*

*Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 265 F. Supp. 3d 1196, 1202-03 (D. Or. 2017) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998) (explaining that the defense of improper venue "may be waived as a result of the course of conduct pursued by a party during litigation")).[2]   After Khayet raised these defenses, he submitted a Motion to Disqualify [NDC's] Counsel, ECF No. 82, and specifically asked the Court to rule on this motion before ruling on his Motion to Dismiss.   He also continued to submit several other motions and filings requesting various forms of relief.   *See, e.g.,* Motion to Initiate Disciplinary Proceedings, ECF No. 93, against NDC's counsel; Motion to Compel, ECF No. 119 (requesting that the Court "issue Litigation Holds" to various individuals); Motions for Status, Scheduling, and Case Management Conferences, ECF Nos. 125-27; Notices of Criminal Activity, ECF Nos. 133 and 135 (stating criminal indictments against NDC's counsel and NDC executives may be forthcoming and that the Court "should immediately dismiss this case and vacate all previous orders").[3]   The motions were referred to and denied by Magistrate Judge Zwart, Memorandum and Order, ECF No. 141, and Khayet moved to strike that order, ECF Nos. 141, and separately objected to it, ECF No. 147.

Based on Khayet's appearances, motions, and filings in this case, both before and after he asserted his 12(b)(2) and 12(b)(3) defenses, the Court finds he has submitted to personal jurisdiction and that he has waived his improper venue defense.

---

[2] *See also Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 41-42 (D. Mass. 2006) (stating timely Rule 12 defenses may be forfeited by subsequent actions); *Koninklijke Philips N.V. v. ASUSTek Comput. Inc.*, No. CV 15-1125-GMS, 2017 WL 3055517, at *3 (D. Del. July 19, 2017) (finding "Defendants' subsequent conduct further demonstrated abandonment of the venue defense").

[3] Khayet has made several unusual Notice filings throughout this case. *See, e.g.,* Notice, ECF No. 98 (requesting that the Court "encourage" NDC's counsel to respond to his communication efforts); Notice of NDC Salaries, ECF No. 138 (stating the salaries of various NDC employees).

## II.  Subject-Matter Jurisdiction—Amount in Controversy

NDC invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1), which provides "that federal jurisdiction exists over 'civil actions' between 'citizens of different States' where the amount in controversy exceeds 'the sum or value of $75,000.'" *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 396 (8th Cir. 2011).  The parties agree the diversity-of-citizenship requirement is satisfied, but Khayet argues NDC failed to demonstrate that the amount in controversy exceeds $75,000.

It is the plaintiff's burden to establish that the diversity jurisdiction requirements were satisfied at the time of filing, by a preponderance of the evidence.  *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010).  At the pleading stage, a complaint that "alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount.'"  *Id.* (quoting *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002)).  Events subsequent to the time of filing which reduce the amount in controversy "do not destroy diversity jurisdiction."  *Id.* (citing *Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970)).  "Subsequent events may, however, be relevant to prove the existence or nonexistence of diversity jurisdiction at the time of filing."  *Id.* (citing *Grinnel Mut. Reins. Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997)).

Khayet argues the amount-in-controversy requirement is not met because "[t]he only money Defendant [Khayet] has thus far claimed is owed to him under the Consulting Agreement is a few thousand dollars[ ] . . . ."  Def.'s Br., ECF No. 79, Page ID 528.  This argument fails to recognize how the amount in controversy is measured.

"[T]he amount in controversy is measured by 'the value to the plaintiff of the right sought to be enforced.'" *Federated Mut. Ins. Co. v. Moody Station and Grocery*, 821 F.3d 973, 977 (8th Cir. 2016) (quoting *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 821 (8th Cir. 2011)).

NDC's Complaint alleges that "[u]nder Section 2.a. of the Consulting Agreement, the consideration that would be payable to [Khayet] in the event the conditions for compensation were met . . ." exceeds $75,000. Thus, NDC has alleged that the value of its claim for a declaratory judgment exceeds $75,000. NDC has also alleged damages in connection with its other claims, including tortious interference with a business relationship or expectancy. *See Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir. 1971) ("[A] single plaintiff may properly aggregate all of the claims which he has against the defendants to satisfy the jurisdictional amount."). It appears these allegations are made in good faith and, at least at the pleading stage, it does not appear to a legal certainty that NDC's claims are for $75,000 or less. *See Scottsdale*, 620 F.3d at 931. Therefore, NDC has sufficiently pled the requisite amount in controversy for purposes of § 1332(a)(1).

### III. Failure to State a Claim—12(b)(6)

Khayet argues that each of NDC's claims is not adequately pled.

### A. Declaratory Judgment

"The Declaratory Judgment Act provides that any federal court, '[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric.*

*Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012) (quoting 28 U.S.C. § 2201(a)). "The phrase 'case of actual controversy' in § 2201 'refers to the type of Cases and Controversies that are justiciable under Article III.'" *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 971 (8th Cir. 2015) (quoting *Id.*). "There must be a concrete dispute between parties having adverse legal interests, and the declaratory judgment plaintiff must seek 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Maytag*, 687 F.3d at 1081.

NDC alleges it expressly terminated the Consulting Agreement on October 4, 2017, and that Khayet is entitled to no compensation thereunder. It also alleges that Khayet disputes NDC's ability to terminate the Consulting Agreement and that he believes he is entitled to some compensation. Khayet contends the Consulting Agreement remains executory and enforceable because NDC had no right to terminate it unilaterally. As a result, NDC seeks a declaration from the Court that (1) Khayet is owed nothing under the Consulting Agreement; (2) NDC has not breached the Consulting Agreement; and (3) the Consulting Agreement is terminated, except with respect to any surviving terms and conditions. Thus, there is a concrete legal dispute between NDC and Khayet and NDC seeks specific relief of a conclusive character. *See id.* The Court will not dismiss NDC's claim for a declaratory judgment.

### B.  Tortious Interference with a Business Relationship or Expectancy

> To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference

caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Midland Props., L.L.C. v. Wells Fargo, N.A.*, 893 N.W.2d 460, 465 (Neb. 2017). Khayet argues this claim was not sufficiently pled because NDC did not specifically identify any business relationships or expectancies with which he interfered, and because NDC made only a general statement of damages.

Under Fed. R. Civ. P. 8(a), it is not always necessary for a plaintiff to allege specifically, with particularity, the business relationships or expectancies that the defendant interfered with; rather, the facts must support a claim that is plausible. *See Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1196 (D. Neb. 2015); *see also McDonald Apiary, LLC v. Starrh Bees, Inc.*, 8:14-CV-351, 2015 WL 11108873, at *3 (D. Neb. May 22, 2015); *Am. Home Assurance Co. v. Greater Omaha Packing Co., Inc.*, No. 8:11CV270, 2012 WL 2061941, at *2 (D. Neb. June 7, 2012).

The Amended Complaint states that after NDC told Khayet the Consulting Agreement was terminated, he persisted in "contact[ing] certain persons and entities . . . interested in [NDC's] business," and "he also contacted certain business partners, potential business partners, and vendors . . . regarding a potential transaction involving [NDC]." Am. Comp. ¶¶ 19 & 21, ECF No. 11, Page ID 24-5. NDC alleges Khayet's unwanted conduct caused interruptions, delays, and confusion in its business operations and potential sale of the company. NDC also alleges that its value has decreased, its goodwill has been damaged, and it has lost profits. Based on these allegations, the Court finds NDC has pled enough factual content to permit "the reasonable inference that [Khayet] is liable for the misconduct alleged." *Barton*, 820

F.3d at 964 (quoting *Iqbal*, 556 U.S. at 678). Thus, NDC has stated a plausible claim for tortious interference with a business relationship or expectancy.

### C. Fraudulent and Negligent Misrepresentation

NDC claims Khayet defrauded it by misrepresenting that he had the lawful authority—*i.e.* a Nebraska real estate broker's license and other necessary licenses[4]—to broker a transaction for NDC's tangible and intangible assets and by concealing the fact that he did not have those licenses. While there can be some overlap, fraudulent misrepresentation and fraudulent concealment are distinct claims under Nebraska law. *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 331-334 (Neb. 2010). However, the parties only addressed whether NDC stated a plausible claim for fraudulent misrepresentation.

To state a claim for fraudulent misrepresentation under Nebraska law,

a plaintiff must allege (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that the representation was made with the intention that the plaintiff should rely on it; (5) that the plaintiff did so rely on it; and (6) that the plaintiff suffered damage as a result.

*Zawaidah v. Neb. Dep't of Health and Human Servs. Regulation and Licensure*, 825 N.W.2d 204, 212 (Neb. 2013).

NDC does not allege Khayet made a particular statement that he possessed any professional licenses. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (Fed. R. Civ. P. 9(b) requires plaintiffs to allege "the time, place, and contents of false

---

[4] In addition to alleging Khayet misrepresented that he had a Nebraska real estate broker's license, NDC alleges he misrepresented that he was registered with the Securities and Exchange Commission as a Broker under the Securities and Exchange Act and that he was registered with the Financial Industry Regulatory Authority.

representations . . . .").  Rather, NDC argues Khayet impliedly misrepresented he was appropriately licensed to perform the Consulting Agreement through his conduct of entering into and negotiating it.  *Ed Miller & Sons, Inc. v. Earl*, 502 N.W.2d 444, 454 (Neb. 1993) ("Misrepresentation is a manifestation, by word or conduct, which constitutes an assertion not in accordance with fact."); *see also* Restatement (Second) of Torts § 525 cmt. b (Am. Law Inst. 1977) (defining "misrepresentation").[5]  Khayet primarily argues NDC failed to allege reliance on any alleged misrepresentation his conduct may have implied.

There are no allegations in the Amended Complaint that NDC believed Khayet actually had the professional licenses it claims were necessary for him to perform under the Consulting Agreement.  Nor are there any allegations that NDC believed it was necessary for Khayet to have such licenses when the Consulting Agreement was being considered or negotiated.  Nevertheless, NDC argues that, at the pleading stage, it is reasonable to infer from the facts alleged in the Amended Complaint that NDC was relying on Khayet being a licensed real estate broker, among other things, when it executed the Consulting Agreement.  Yet, the Consulting Agreement only asked Khayet to "introduce" NDC to potential buyers and expressly clarified that he was not authorized to act as an agent for or negotiate on behalf of NDC.  Consulting Agreement §§ 1, 11, ECF No. 2, Page ID 1, 8.  The issue of Khayet's professional qualifications was never discussed.  Thus, the Court finds NDC has not sufficiently alleged that it was relying on Khayet being a licensed real estate broker and registered with multiple regulatory

---

[5] Fraudulent misrepresentation is a "tort cause[ ] of action adopted from the Restatement (Second) of Torts § 525.  *Zawaidah v. Neb. Dep't of Health and Human Servs. Regulation and Licensure*, 825 N.W.2d 204, 212 (Neb. 2013).

agencies when it executed the Consulting Agreement. The Court will dismiss NDC's fraudulent and negligent misrepresentation[6] claims, without prejudice, and permit NDC to amend its Amended Complaint to allege such facts, if they exist. *See Mickelson*, 823 F.3d at 923 (quoting *Iqbal*, 556 U.S. at 679) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

### D. Breach of Contract

#### 1. Breach of the Confidentiality Agreement

"For breach of contract, the plaintiff must plead the existence of a promise, its breach, damages, and compliance with any conditions precedent that activate the defendant's duty." *Kotrous v. Zerbe*, 846 N.W.2d 122, 126 (Neb. 2014). Although the Amended Complaint alleged Khayet was a party to the Confidentiality Agreement, the contract itself shows only Timber Ventures, LLC, and NDC[7] were the contracting parties with Khayet signing the contract on Timber Ventures, LLC's, behalf. *See Brown*, 820 F.3d at 373 (quoting *Iqbal*, 556 U.S. at 678) (The Court is not required to accept any "legal conclusion couched as a factual allegation."). Thus, Khayet did not personally promise anything to NDC in the Confidentiality Agreement and NDC's claim for a breach of that contract is properly asserted against Timber Ventures, LLC. Accordingly, this claim against Khayet will be dismissed, with prejudice, and NDC will be granted leave to

---

[6] Both fraudulent and negligent misrepresentation require a plaintiff to show reliance. *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 917 (Neb. 2010).

[7] The Confidentiality Agreement was "between Nebraska Colocation Centers, LLC [ ], and Timber Ventures, LLC." Confidentiality Agreement, ECF No. 12, Page ID 34 & 36. At the time this contract was executed, Nebraska Colocation Centers, LLC, was a trade name registered to NDC.

amend its Amended Complaint to include a claim for breach of the Confidentiality Agreement against Timber Ventures, LLC.

The Court notes that according to the Kansas Secretary of State's public records,[8] the current status of Timber Ventures, LLC, is: Forfeited—Failed to Timely File [Annual Report].  The date of forfeiture is July 15, 2017.  The Confidentiality Agreement was executed on December 1, 2016.  Thus, to the extent Timber Ventures, LLC, has become insolvent or is no longer subject to suit, NDC has plausibly alleged that Khayet may be personally liable for Timber Ventures, LLC's, debts and obligations.[9]  *See infra* Section III.H. (discussing Khayet's personal responsibility for Timber Ventures, LLC's, liabilities under a corporate veil-piercing theory of liability).

### 2.  Breach of the Consulting Agreement

Khayet was a personal signatory and party to the Consulting Agreement, wherein he promised he would not disclose certain information that NDC sought to keep confidential.  Consulting Agreement, ECF No. 2 § 6., Page ID 7.  NDC alleges Khayet breached that promise which damaged its goodwill and reputation, decreased its profits and value, and resulted in the loss of confidentiality.  Based on these allegations, NDC has stated a plausible claim against Khayet for breach of the Consulting Agreement. *See Kotrous*, 846 N.W.2d at 126.  This claim will not be dismissed.

### E.  Junkin Act—Neb. Rev. Stat. § 59-805

---

[8] "[C]ourts may consider matters of public record . . ." when reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).

[9] *See* Kan. Stat. Ann. §§ 17-76,139; 17-7509; and 17-7510(a) (stating the legal effect of failing to file an annual report for a limited liability company).

Section 59-805 of the Junkin Act "makes it unlawful to drive another entity out of business." *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 828 N.W.2d 147, 151 (Neb. 2013) (citing Neb. Rev. Stat. § 59-805). "The statute reaches intentional predatory conduct which has no purpose other than to drive another entity out of business." *Credit Bureau Servs.*, 828 N.W.2d at 152. Thus, the plaintiff must show the defendant committed an "act with the intent and for the purpose of driving the plaintiff out of business." *Id.* at 153. "[T]he ordinary meaning of the phrase 'out of business' [is] a complete cessation of business operations." *Id.*

Khayet argues NDC has not alleged he engaged in any act "that might lead to the complete cessation of [NDC's] business operations." Def.'s Br., ECF No. 79, Page ID 532. Whether he took action that might actually drive NDC out of business is irrelevant; to state a plausible claim NDC must only allege that Khayet took action *intended* to and with the *purpose* of driving NDC out of business. The facts in the Amended Complaint, however, do not support an inference that Khayet took any action with the purpose and intent of driving NDC completely out of business.

The Court will dismiss NDC's § 59-805 Junkin Act claim, without prejudice. Since the Amended Complaint and Khayet's Motion to Dismiss were filed and briefed, Khayet has filed multiple notices in this case, ECF Nos. 133 and 135, stating he has pressed criminal charges against NDC and its executives with municipal, state, and federal law enforcement agencies.[10] To the extent that NDC believes these criminal allegations are not legitimately based in fact and constitute "predatory conduct which

_____

[10] "[C]ourts may consider . . . items appearing in the record of the case" when evaluating a motion to dismiss for failure to state a claim. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).

has no purpose other than to drive [it] out of business," the Court will permit NDC to amend its Amended Complaint to include such allegations, and any other relevant facts, in support of its claim under § 59-805 of the Junkin Act.

### F. Unfair Competition and Trademark Infringement

The Nebraska Supreme Court has explained that "the common-law definition of unfair competition involves 'palming off' one's goods as the goods of another." *Edge in Coll. Preparation, LLC v. Peterson's Nelnet, LLC*, 8:16-CV-559, 2017 WL 2423510, at *3 (D. Neb. June 5, 2017) (quoting *John Merkel Ford, Inc. v. Auto-Owners Ins. Co.*, 543 N.W.2d 173, 178 (Neb. 1996)). The "gravamen of 'unfair competition' . . . is whether the defendant made a representation relating to its own goods or services 'that is likely to deceive or mislead prospective purchasers to the likely commercial detriment of another . . . .'" *Edge*, 2017 WL 2423510, at *3 (quoting Restatement (Third) of Unfair Competition § 2 (Am. Law Inst. 1995)). Further, in Nebraska, common-law trademark infringement requires a plaintiff to show 'that it has ownership or rights in the trademark and that the defendant has used the mark in connection with goods or services in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services.'" *Two Men and a Truck/Int'l, Inc. v. Thomas*, 908 F. Supp. 2d 1029, 1036-37 (D. Neb. 2012) (quoting *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011)).

There are no allegations that Khayet used NDC's name in connection with his own consumer goods or services, nor are there any allegations that the consumers of NDC's products or services are likely to be confused about the source those products or services. NDC also does not allege that Khayet was a market competitor, only that he

was briefly engaged to introduce potential buyers to NDC. *See Edge*, 2017 WL 2423510, at *3 (finding there can be no unfair competition where the plaintiff and the defendant are not competitors in the marketplace). Accordingly, NDC's claims for unfair competition and common-law trademark infringement will be dismissed, with prejudice.

### G. Deceptive Trade Practices

NDC claims Khayet violated § 87-302 of the UDTPA, which provides, in relevant part:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she:
> . . .
>
> (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
> . . .
>
> (5) Represents that . . . a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
> . . .
>
> (9) Disparages the goods, services, or business of another by false or misleading representation of fact;
> . . .
>
> (16) Uses any scheme or device to defraud by means of . . . obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises[.]

Neb. Rev. Stat. § 87-302(a). "In order to prevail in an action under the [UDTPA], a complainant need not prove competition between the parties." Neb. Rev. Stat. § 87-302(b).

NDC has stated a plausible claim under § 87-302(a). After NDC communicated its termination of the Consulting Agreement to Khayet, he insisted the contract remained

executory and enforceable. He continued to misrepresent to third parties that he had the authority to facilitate a purchase of NDC's assets despite NDC's requests to stop. He also began forming a group of potential buyers, including himself, to collectively purchase NDC's assets. The Amended Complaint alleges Khayet engaged in the foregoing activity as part of a fraudulent scheme, first to earn NDC's confidence and then to decrease NDC's value so that he could purchase its assets at a reduced price. Based on these factual allegations, the Court finds that the Amended Complaint states a plausible claim under the above sections of the UDTPA.

### H. Corporate Veil

In its Amended Complaint, NDC asserts Khayet should be held personally liable for the obligations of LK Capital and Timber Ventures, LLC.

"State law is viewed to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). In Nebraska, "[p]roceedings seeking disregard of corporate entity, that is, piercing the corporate veil to impose liability on a shareholder for a corporation's debt or other obligation, are equitable actions." *Christian v. Smith*, 759 N.W.2d 447, 461 (Neb. 2008). A corporation is generally "viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation." *Id.* at 462; *see also Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 810 N.W.2d 677, 685 (Neb. 2012) (applying Nebraska veil-piercing principles to a limited liability company). "A court will disregard a corporation's [or limited liability company's] identity only where the [business entity] has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another." *Christian*,

759 N.W.2d at 462; *Switzer*, 810 N.W.2d at 685.  "A plaintiff seeking to pierce the corporate veil must allege and prove that the [entity] was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights."  *Id.*

Neither LK Capital nor Timber Ventures, LLC, was made a party to this action and NDC has not claimed these entities are liable for anything.  Khayet cannot be held responsible, in equity, for the liabilities of these legal entities when no liability has been asserted against them.  Accordingly, NDC's equitable claim to pierce the corporate veil of LK Capital and Timber Ventures, LLC, is not adequately pled.  As stated above, however, NDC will be granted leave to amend the Amended Complaint to properly assert its claim for breach of the Confidentiality Agreement against Timber Ventures, LLC.  NDC will also be permitted to include in any second amended complaint its equitable claim to pierce Timber Ventures, LLC's, corporate veil to hold Khayet personally responsible for its liabilities with respect to any breach of the Confidentiality Agreement.

Other than claiming Khayet is responsible for LK Capital's liabilities, there are no factual allegations regarding LK Capital's involvement in this dispute.  Therefore, NDC's claim to pierce LK Capital's veil is dismissed, with prejudice.

## IV.  Rule 11 Sanctions

NDC requests monetary and filing sanctions against Khayet for filing frivolous motions and raising frivolous arguments.  The Court has the discretion to impose sanctions under Fed. R. Civ. P. 11 and "substantial deference" is given "to the district court's determination as to whether sanctions are warranted because of its familiarity

with the case and counsel involved." *Meyer v. U.S. Nat'l Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015). Khayet's motions and notice filings are voluminous and often improper, repetitive, and dilatory. As a result, Magistrate Judge Zwart has admonished Khayet that if he continues to make inappropriate notice filings the Court will sanction him under 28 U.S.C. § 1927. Memorandum and Order, ECF No. 141, Page ID 1122-23; *see also* Order, ECF No. 145, Page ID 1134 (prohibiting Khayet from directly contacting chambers after he repeatedly requested the personal information of chambers staff). In light of this admonishment, the Court will deny NDC's Motion for Sanctions, without prejudice and subject to reassertion, and remind Khayet that future submission of improper or repetitive motions may lead to sanctions. *See Am. Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 61 (8th Cir. 1988) ("Pro se litigants are not excused from complying with court orders or substantive and procedural law.").

**V. Motion to Strike Order and Objection to Order**

Khayet's Motion to Strike Order, ECF No. 143, and Objection to Order, ECF No. 147, ask the Court to review and vacate Magistrate Judge Zwart's Memorandum and Order, ECF No. 141. Both Motions were submitted without a brief, required by NECivR. 7.1(a)(1)(A), and Khayet has not demonstrated that he is entitled to relief under Fed. R. Civ. P. 60 or 72. The Motions will, therefore, be denied. If Khayet continues to submit motions raising substantial issues of law without making a good faith effort to demonstrate that he is entitled to the relief sought, he will be sanctioned.

**CONCLUSION**

Through his conduct, Khayet submitted to the Court's personal jurisdiction and waived his improper-venue defense. NDC adequately pled the jurisdictional amount in

controversy.  Thus, the Court will not dismiss this case under Fed. R. Civ. P. 12(b)(1), (2), or (3).

NDC's claims against Khayet under Nebraska law for breach of the Confidentiality Agreement, unfair competition, and common-law trademark infringement will be dismissed, with prejudice.  Its claims for fraudulent misrepresentation, negligent misrepresentation, and a violation of § 59-805 of the Junkin Act will be dismissed, without prejudice.  NDC will be granted leave to amend its Amended Complaint with respect to its claims dismissed without prejudice.  Any second amended complaint may include a claim for breach of the Confidentiality Agreement against Timber Ventures, LLC, as well as an equitable claim to pierce its corporate veil and hold Khayet personally responsible for its liabilities.

NDC's Motion for Rule 11 Sanctions will be denied, without prejudice and subject to reassertion.  Khayet's Motion to Strike Order and Objection to Order will be denied.

Accordingly,

IT IS ORDERED:

1.    The Motion to Dismiss, ECF No. 78, filed by Defendant Leo Khayet, is granted, in part, as follows:

a.  Plaintiff Nebraska Data Centers, LLC's, claims under Nebraska law against Defendant Leo Khayet for breach of the Confidentiality Agreement, unfair competition, and common-law trademark infringement are dismissed, with prejudice;

b.  Plaintiff Nebraska Data Centers, LLC's, claims under Nebraska law for fraudulent misrepresentation, negligent misrepresentation, and a violation of § 59-805 of the Junkin Act are dismissed, without prejudice.

The Motion is otherwise denied;

2.      Plaintiff Nebraska Data Centers may, but is not required to, amend its Amended Complaint in accordance with this Memorandum and Order on or before May 25, 2018;

3.      If NDC does not file a second amended complaint, Defendant Leo Khayet must file an answer to the Amended Complaint on or before June 4, 2018;

4.      The Motion for Sanctions, ECF No. 94, filed by Plaintiff Nebraska Data Centers, LLC, is denied, without prejudice and subject to reassertion; and

5.      The Motion to Strike Order, ECF No. 143, and the Objection to Order, ECF No. 147, filed by Defendant Leo Khayet, are denied.


Dated this 10th day of May, 2018.


                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        Chief United States District Judge