# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NEBRASKA DATA CENTERS, LLC, and AMERICAN NEBRASKA LIMITED PARTNERSHIP,<br><br>    Plaintiffs,<br><br>  vs.<br><br>LEO KHAYET, AND TIMBER VENTURES, LLC,<br><br>    Defendants. | 8:17CV369<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Default Judgment, ECF No. 206, the Motion for Sanctions, ECF No. 227, and the Motion for Attorney Fees, ECF No. 229, filed by Plaintiffs Nebraska Data Centers, LLC (NDC), and American Nebraska Limited Partnership (ANLP) (collectively, Plaintiffs). For the reasons stated below, the Motions will be granted.

## BACKGROUND

**I. Factual Background**

The following facts are those alleged in the Second Amended Complaint, ECF No. 166.

NDC and Defendant Leo Khayet entered into a Consulting Agreement, ECF No. 2, on August 8, 2017. The Consulting Agreement provided:

> NDC has asked [Khayet] to introduce or re-introduce the Company to targeted family offices, high net worth individuals, strategic real estate investors and other capital groups and/or individuals identified in Appendix A that have the financial ability to purchase the assets of NDC [ ]: including all tangible and intangible assets.

Consulting Agreement, ECF No. 2, Page ID 6. The terms of the Agreement also provided that "[i]f NDC or any affiliate[ ] completes any transaction with any party listed in Appendix A within thirty-six [ ] months after the date of this Agreement" Khayet shall be paid two percent "of the purchase and/or sale of NDC assets in whole or in part . . . ." *Id.* Neither NDC nor any of its assets were sold.

On October 4, 2017, NDC sent Khayet a letter that stated NDC "hereby terminates the Consulting Agreement with immediate effect as of the date of this letter." Termination Letter, ECF No. 2, Page ID 11. Khayet disputed NDC's legal ability to terminate the Consulting Agreement and, despite NDC's multiple requests to stop, he continued to contact individuals and business entities interested in purchasing NDC's assets. He also contacted some of NDC's vendors and discussed the prospect of a transaction involving NDC and its assets. Eventually, Khayet revealed to NDC that he was personally interested in purchasing NDC's assets either individually or as a member of a group of purchasers. Plaintiffs allege Khayet's intent was to interfere with their business relationships, decrease Plaintiffs' perceived market value, and damage their ability to sell NDC's and ANLP's assets.

On December 1, 2016, prior to executing the Consulting Agreement, NDC and Defendant Timber Ventures, LLC, of which Khayet is the President, entered into a Mutual Confidentiality and Nondisclosure Agreement (Confidentiality Agreement), ECF No. 12. NDC and Timber Ventures, LLC, entered into the Confidentiality Agreement for the purpose of determining whether NDC would engage Khayet or Timber Ventures, LLC, with respect to the proposed sale of NDC's and ANLP's assets. Plaintiffs allege Khayet disclosed their confidential information to unauthorized individuals and business entities.

2

## II. Procedural Background

Although this case has not progressed beyond the pleading stage, the procedural background is extensive. The Court incorporates the procedural background discussion from its Memorandum and Order, ECF No. 158, Page ID 1171-72, by reference, and provides the following summary and additional background:

On October 5, 2017, NDC filed a Complaint for Declaratory Judgment, ECF No. 1, against Khayet, seeking a declaration that the Consulting Agreement was terminated and that Khayet was owed no compensation. On October 26, 2017, Khayet filed his own Complaint, ECF No. 1 in Case No. 8:18cv330, against several defendants, including NDC and ANLP, in the U.S. District Court for the District of Kansas. Khayet later amended his Complaint, *see* ECF No. 10, to assert claims against only Todd Cushing, the President of NDC.

On November 2, 2017, NDC filed the Amended Complaint, ECF No. 11, which sought a declaratory judgment and asserted the following claims: (1) tortious interference with a business relationship or expectancy; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) breach of contract; (5) a violation of the Junkin Act, Neb. Rev. Stat. § 59-805; (6) unfair competition; (7) a violation of the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-302; and (8) common-law trademark infringement. On November 17, 2017, NDC moved for a preliminary injunction, ECF No. 21, and on January 11, 2018, NDC also moved to enjoin Khayet from prosecuting his case in the District of Kansas under the first-to-file rule. ECF No. 69.

On January 26, 2018, the Court granted NDC's Motion for Preliminary Injunction, in part, and enjoined Khayet from prosecuting his case in the District of Kansas.

Memorandum and Order, ECF No. 76.  On May 10, 2018, the Court granted, in part, and denied, in part, Khayet's Motion to Dismiss the Amended Complaint, ECF No. 78, and granted NDC's request for leave to file a second amended complaint.  Memorandum and Order, ECF No. 158.  NDC timely filed its Second Amended Complaint on May 25, 2018, which added ANLP as a plaintiff and Timber Ventures, LLC, as a defendant.  Khayet was ordered to answer or otherwise respond to Plaintiffs' Second Amended Complaint on or before June 15, 2018, and Timber Ventures, LLC, was ordered to answer or otherwise respond on or before June 19, 2018.  ECF No. 178.

Khayet and Timber Ventures, LLC, failed to file an answer or otherwise respond to the Second Amended Complaint.  From the date the Second Amended Complaint was filed to June 15, 2018, Khayet filed a discovery motion, ECF No. 170, a "Motion to Restore Justice," ECF No. 173, a "Notice of Exigent Filing in District of Kansas," ECF No. 176, and a Motion to Stay and Vacate, ECF No. 181.  These filings did not answer or otherwise respond to the Second Amended Complaint, and Khayet's motions were summarily denied.  No filings were made, and no attorney appearance was entered on Timber Ventures, LLC's, behalf.  On June 25, 2018, Magistrate Judge Zwart issued a Findings and Recommendation, ECF No. 195, recommending that the Court enter default judgment against Khayet and Timber Ventures, LLC.  The Court did not adopt that recommendation, and specifically instructed Khayet and Timber Ventures, LLC, to file an answer to the Second Amended Complaint on or before July 17, 2018.  ECF No. 200.  The Court also stated that default would be entered under Fed. R. Civ. P. 55(a) if an answer was not timely filed.  *Id.*  Neither Khayet nor Timber Ventures, LLC, filed an answer to the Second Amended Complaint.  *See* ECF No. 202.

On July 18, 2018, the Court directed the Clerk to enter default against Khayet and Timber Ventures, LLC. Although the Court explained in its Memorandum and Order, ECF No. 200, that Khayet and Timber Ventures, LLC, could move to set aside the entry default for good cause under Fed. R. Civ. P. 55(c), no such motion was made. Plaintiffs moved for entry of Default Judgment under Fed. R. Civ. P. 55(b)(2), ECF No. 206, and on August 27, 2018, the Court held a hearing on that motion pursuant to Fed. R. Civ. P. 55(b)(2)(B), ECF No. 249.

Throughout this case, Khayet has disregarded the orders of this Court and has engaged in conduct designed to harass Court employees, harass and obstruct opposing counsel, and needlessly waste the time and resources of the Court, opposing counsel, and adverse parties. Rather than answer or meaningfully respond to the Second Amended Complaint, he engaged in a pattern of accusing Plaintiffs, Plaintiffs' counsel, Court staff, and chambers staff of various improprieties, including fraud and criminal activity. *See, e.g.*, ECF Nos. 133, 135, 136, 145, 189, 199, 202, 204, 205, 209, 230, 243, 247, 252, 253. He attempted to influence the outcome of this case by threatening opposing counsel, *see, e.g.*, ECF No. 226, Page ID 1608-09, and repeatedly warning opposing counsel, chambers staff, and Clerk's Office staff that he has initiated criminal investigations against them. Khayet's conduct toward Clerk's Office staff and chambers staff resulted in Magistrate Judge Zwart issuing orders that prohibited him from initiating contact with the employees working in the Clerk's Office and her chambers. ECF Nos. 145, 189, 205. He subsequently violated the express restrictions contained in those orders on several occasions. ECF No. 226 (transcript of contempt hearing). Further, Khayet regularly stated in filings and motions that he believed the Court's orders were

unlawful and questioned their validity. *See, e.g.,* ECF No. 248, Page ID 1966-67. He also contacted other judges in this District asking them to intervene in this case.

## DISCUSSION

### I.  Default Judgment

Plaintiffs request that default judgment be entered against both Khayet and Timber Ventures, LLC, based on their failure to answer the Second Amended Complaint.

It is "appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Inman v. Am Home Furniture Placement, Inc.*, 120 F.3d 117, 119 (8th Cir. 1997)).[1] "[W]hen a default judgment is entered, facts alleged in the complaint may not be later contested." *Marshall*, 616 F.3d at 852 (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)). It is, however, "incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment." *Marshall*, 616 F.3d at 852-53 (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)).

The Second Amended Complaint asserts the following claims: Count I—Declaratory Judgment; Count II—Tortious Interference with a Business Relationship or Expectancy; Count III—Breach of the Confidentiality Agreement; Count IV—Breach of the Consulting Agreement; Count V—Violation of the Junkin Act, Neb. Rev. Stat. § 59-805; and Count VI—Violation of the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302 *et seq.* Plaintiffs voluntarily dismissed Counts II, III, and IV during the

---

[1] Khayet's decision to proceed pro se in this case does not excuse him from compliance with substantive and procedural law. *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986).

Rule 55(b)(2)(B) hearing, and the remaining claims—Counts I, V, and VI—are asserted against Khayet individually and exclusively. Timber Ventures, LLC, will, therefore, be dismissed from this action and default judgment will not be entered against it. Accordingly, the Court will first address Counts I, V, and VI to ensure the unchallenged facts support a legitimate cause of action against Khayet. The Court will then address Plaintiffs' request for injunctive relief, damages, and attorney fees. *Marshall*, 616 F.3d at 852-53.

### A. Count I—Declaratory Judgment

"The Declaratory Judgment Act provides that any federal court, '[i]n a case of actual controversy within its jurisdiction[2] . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012) (quoting 28 U.S.C. § 2201(a)). "The phrase 'case of actual controversy' in § 2201 'refers to the type of Cases and Controversies that are justiciable under Article III.'" *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 971 (8th Cir. 2015) (quoting *Id.*). "There must be a concrete dispute between parties having adverse legal interests, and the declaratory judgment plaintiff must seek 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Maytag*, 687 F.3d at 1081.

---

[2] *See* Second Am. Comp. ¶¶ 6, 12, ECF No. 166, Page ID 1202 (alleging the statutory requirements for diversity jurisdiction).

Plaintiffs request the following declarations: (1) "no amount is due or owing to Khayet under the [Consulting] Agreement by NDC, by ANLP . . ., by any other entity affiliated with NDC or ANLP, or by their owners, managers, members, officers, directors, or employees;" (2) "NDC has complied with all terms and conditions of the Agreement and has not breached any of the terms and conditions of the Agreement; and" (3) "the [Consulting] Agreement is terminated, except with respect to those terms and conditions that survive the termination of the Agreement." Second Am. Comp. ¶ 18, ECF No. 166, Page ID 1203.

Under Nebraska law, "[a] party to an executory contract has the right to rescind the contract, and terminate it wholly, without the consent of the other party, who is in no fault[.]" *Faught v. Platte Valley Pub. Power & Irrigation Dist.*, 51 N.W.2d 253, 158-59 (Neb. 1952) (quoting *Hale v. Hess*, 46 N.W.2d 261 (Neb. 1890)). Thus, the Court finds that the unchallenged facts alleged in the Second Amended Complaint constitute a legitimate cause of action for the declaratory judgment requested in Count I.

**B.     Count V—Violation of the Junkin Act, Neb. Rev. Stat. § 59-805**

Section 59-805 of the Junkin Act "makes it unlawful to drive another entity out of business." *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 828 N.W.2d 147, 151 (Neb. 2013) (citing Neb. Rev. Stat. § 59-805). "The statute reaches intentional predatory conduct which has no purpose other than to drive another entity out of business." *Credit Bureau Servs.*, 828 N.W.2d at 152. Thus, the plaintiff must show the defendant committed an "act with the intent and for the purpose of driving the plaintiff out of business." *Id.* at 153. "[T]he ordinary meaning of the phrase 'out of business' [is] a complete cessation of business operations." *Id.*

8

Plaintiffs allege Khayet "made false criminal allegations against NDC and its executives with municipal, state, and federal law enforcement agencies[ ]" with the intent to cause the complete cessation of Plaintiffs' business. Second Am. Comp. ¶¶ 49-50, ECF No. 166, Page ID 1208. For several months, Khayet has also been stating in various filings and email communications that he has caused criminal investigations to be initiated against NDC's executives and legal counsel. *See, e.g.*, ECF Nos. 132-36, 248, 252. Based on the alleged facts and Khayet's own representations in his filings, the Court finds that Count V constitutes a legitimate cause of action against Khayet.

### C. Count VI—Violation of the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302

Section 87-302 of the Nebraska Uniform Deceptive Trade Practices Act (UDTPA) provides, in relevant part:

> (a) A person engages in deceptive trade practices when, in the course of his or her business, vocation, or occupation, he or she:
>
> > (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
> > . . .
> >
> > (5) Represents that . . . a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
> > . . .
> >
> > (9) Disparages the goods, services, or business of another by false or misleading representation of fact;
> > . . .
> >
> > (16) Uses any scheme or device to defraud by means of . . . obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises[.]

9

Neb. Rev. Stat. § 87-302(a). "In order to prevail in an action under the [UDTPA], a complainant need not prove competition between the parties." Neb. Rev. Stat. § 87-302(b).

Plaintiffs allege that after NDC unequivocally terminated the Consulting Agreement and instructed Khayet to cease all efforts in connection with that contract, he nevertheless continued to contact individuals and business entities potentially interested in purchasing NDC's assets. In doing so, Plaintiffs allege Khayet misrepresented his authority and affiliation with NDC to these individuals and business entities. Plaintiffs further allege that Khayet was personally interested in purchasing NDC's assets and engaged in the foregoing conduct with the intent to decrease NDC's purchase price. Based on these unchallenged facts, the Court finds that Count VI constitutes a legitimate claim against Khayet.

Satisfied that the unchallenged facts constitute a legitimate cause of action, the Court finds default judgment against Khayet is appropriate in this case. He failed to answer or otherwise respond to the Second Amended Complaint, he did not move to set aside the Rule 55(a) entry of default, and his conduct throughout this case has been harassing and abusive. *Inman*, 120 F.3d at 119 ("[D]efault judgment is appropriate when the party's conduct includes willful violations of court rules, contumacious conduct, or intentional delays.") (internal quotation omitted). Default judgment will, therefore, be entered against Khayet.

### D. Injunctive Relief, Damages, and Attorney Fees

Plaintiffs seek permanent injunctive relief under the UDTPA, Neb. Rev. Stat. § 87-303; liquidated damages under the Junkin Act, Neb. Rev. Stat. § 59-821; and their

attorney fees under the same sections of the UDTPA and the Junkin Act. On August 27, 2018, the Court held a hearing pursuant to Fed. R. Civ. P. 55(b)(2)(B) to determine Plaintiffs' damages. Khayet chose not to attend. ECF No. 248, Page ID 1967.

### i. Permanent Injunctive Relief

Under the UDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may bring an action for, and the court may grant, an injunction under the principles of equity against the person committing the deceptive trade practice." Neb. Rev. Stat. § 87-303. The party seeking an injunction is not required to prove monetary damage, loss of profits, or intentional deceit. *Id.* The Court finds Plaintiffs are entitled to a permanent injunction, as specifically provided in the Order section below, under the UDTPA because absent such an injunction Khayet is likely to continue to engage in deceptive trade practices causing damage to Plaintiffs. He is also likely to continue harassing Plaintiffs' executive officers, members, employees, vendors, and others having an interest in Plaintiffs' businesses.

### ii. Liquidated Damages

Under § 59-821 of the Junkin Act,

> [a]ny person who is injured in his or her business . . . by any other person or persons by a violation of section 59-801 to 59-831 . . . shall recover actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained and which damages are not susceptible of measurement by ordinary pecuniary standards . . . .

Plaintiffs request liquidated damages under § 59-821. As a result of Khayet's violation of § 59-805, Plaintiffs' allege damage to their goodwill, value, reputation, and business relationships. Todd Cushing, the President of NDC, also testified at the Rule

11

55(b)(2)(B) hearing that although discussions with potential purchasers are currently underway, Khayet's conduct has deterred potential purchasers from submitting offers. Plaintiffs acknowledged that the foregoing harm is difficult to quantify and suggested liquidated damages in the amount of $100,000. Ultimately, however, Plaintiffs stated they believe Khayet is likely "judgment proof" and that they would rely upon the Court to determine the appropriate amount of damages.

Based on the unchallenged facts and evidence, Khayet's violation of § 59-805 caused damage to Plaintiffs, but the Court has no way of determining whether any quantity of liquidated damages bears a reasonable relation to Plaintiffs' actual damages. Therefore, the Court will not award liquidated damages under § 59-821 of the Junkin Act.

### iii. Attorney Fees

Section 59-821 of the Junkin Act allows an injured person to recover "a reasonable attorney's fee[,]" and § 87-303(b) of UDTPA grants the Court discretion to "award attorneys' fees to the prevailing party if . . . the party charged with a deceptive trade practice [ ] willfully engaged in the trade practice knowing it to be deceptive." When statutory attorney fees are sought, at least "an affidavit showing a list of the services rendered, the time spent, and the charges made" should be entered into evidence. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks, Inc.*, 896 N.W.2d 156, 198 (Neb. 2017).

Plaintiffs are entitled to attorney fees under both § 59-821 of the Junkin Act and § 87-303(b) of the UDTPA. As the Court previously noted, Plaintiffs were injured by Khayet's violation of § 59-805 of the Junkin Act. Further, Plaintiffs are prevailing parties with respect to their UDTPA claim and they alleged that "Khayet willfully engaged in the

trade practice knowing it to be deceptive." Second Am. Comp. ¶ 55, ECF No. 166, Page ID 1209.

Plaintiffs provided an affidavit and detailed time records in support of their requested attorney fees in the amount of $102,624.50. Futhey Decl., Ex. 1. The affidavit and time records include detailed explanations of the services rendered, the amount of time spent on each task, and the rates Plaintiffs were charged. Based on the affidavit, the time records, the nature of this case and Khayet's conduct, the Court finds that the requested amount of attorney fees is proper and reasonable.

In addition to the request for attorney fees asserted in the Motion for Default Judgment, Plaintiffs also filed a separate Motion for Attorney Fees, ECF No. 229, which requests reimbursement for the fees associated with the July 25, 2018, contempt hearing. At that hearing, the Court ruled that Khayet was liable for Plaintiffs' attorney fees incurred in connection with the hearing, and Plaintiffs' counsel submitted an affidavit stating the fee incurred for the hearing was $980.00.

Accordingly, Plaintiffs will be awarded $102,624.50 in attorney fees under § 59-821 of the Junkin Act and § 87-303(b) of the UDTPA, and $980.00 in attorney fees incurred during the contempt hearing.

**II. Sanctions**

In their Motion for Sanctions, ECF No. 227, Plaintiffs argue that Khayet's claims in *Khayet v. Cushing*, Case No. 8:18cv330, should be dismissed, with prejudice, as a sanction for repeatedly violating Court orders, and for his conduct in this case.[3]

---

[3] Plaintiffs separately filed this Motion in Case No. 8:18cv330.

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, __U.S.__, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Haeger*, 137 S. Ct. at 1186 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). "[O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." *Chambers*, 501 U.S. at 45 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Recognizing that the inherent authority to sanction a litigant by dismissing his case "must be exercised with restraint and discretion[,]" the Court finds that dismissing Case No. 8:18cv330, with prejudice, is an appropriate sanction. On July 25, 2018, the Court held a hearing where Khayet was ordered to show cause why he should not be held in contempt for repeatedly violating Court orders. ECF Nos. 212, 226.[4] The Court found Khayet in civil contempt and, to deter further violations, ordered him to post a $5,000 bond which was to be forfeited in the event of future violations. Despite the Court's instruction that failure to post the bond may result in dismissal of Case No. 8:18cv330, Khayet failed to post the bond without any explanation or request for an extension of time. As a result, the Court ordered Khayet to appear at the August 27, 2018, Rule 55(b)(2)(B) hearing and show cause why the Court should not dismiss Case No. 8:18cv330 for his failure to post the bond. ECF No. 241. Again, Khayet chose not to appear. Instead, he continued to

---

[4] Khayet chose not to appear at this hearing, but the Court initiated contact with him by telephone. He provided no legitimate cause for repeatedly violating Court orders.

accuse Court and chambers staff of criminal conduct and claimed that certain Court employees were the subjects of a criminal investigation by federal law enforcement agencies. ECF Nos. 243, 247, 248.

Khayet's flagrant violations of, and disregard for, the Court's orders, and his constant attempts to influence this case by threatening Plaintiffs, Plaintiffs' counsel, Clerk's Office staff, and chambers staff with criminal investigation are serious abuses of the judicial process that warrant the severe sanction of dismissal. *See Haeger*, 137 S. Ct. at 1186. Accordingly, the Court will dismiss Case No. 8:18cv330, with prejudice.[5]

The Court must also note that Khayet's claims in Case No. 8:18cv330 "arise out of the same set of facts as [Plaintiffs'] claims against [him] in this action." Memorandum and Order, ECF No. 76, Page ID 519 (enjoining Khayet from "simultaneously pursuing duplicative litigation" in the District of Kansas under the first-to-file rule pending resolution of this case). Thus, following entry of default judgment in this case, his claims in Case No. 8:18cv330 would likely be precluded under the principles of res judicata. Despite the Court's instruction, Khayet never attempted to assert any counterclaims in this case against Plaintiffs or their officers, including Todd Cushing. *Id.* (granting Khayet an extension of time to file a responsive pleading and instructing him that he may assert counterclaims).

Accordingly,

IT IS ORDERD:

1. Defendant Timber Ventures, LLC, is dismissed from this action;

---

[5] The Court will issue a separate order and enter judgment in Case No. 8:18cv330.

2.  The Motion for Default Judgment, ECF No. 206, and Motion for Attorney Fees, ECF No. 229, filed by Plaintiffs Nebraska Data Centers, LLC, and American Nebraska Limited Partnership, are granted as follows:

    a.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the Court declares:

        i.  Defendant Leo Khayet is entitled to no compensation nor any other form of payment under the Consulting Agreement contract;

        ii. Plaintiff Nebraska Data Centers, LLC, complied with the terms and conditions of the Consulting Agreement contract and did not breach the Consulting Agreement contract;

        iii. Plaintiff Nebraska Data Centers, LLC, terminated the Consulting Agreement contract on October 4, 2017, except with respect to any surviving terms and conditions;

    b.  Pursuant to the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-303, Defendant Leo Khayet is permanently enjoined from engaging in the following conduct:

        i.  Representing or holding himself out, in any way, as an agent or person otherwise authorized to transact business on behalf of Plaintiff Nebraska Data Centers, LLC; Plaintiff American Nebraska Limited Partnership; or any of the foregoing Plaintiffs' owners, principals, members, trustees, affiliates, or subsidiaries;

        ii. Initiating any contact or communication with the employees or officers, including their immediate family members, of the following: Plaintiff Nebraska Data Centers, LLC; Plaintiff American Nebraska Limited Partnership; or any of the foregoing Plaintiffs' owners, principals, members, trustees, affiliates, or subsidiaries.

    c.  Plaintiffs Nebraska Data Centers, LLC, and American Nebraska Limited Partnership are jointly awarded, and Defendant Leo Khayet is liable for, Plaintiffs' attorney fees in the amount of $103,604.00;

3.  The Motion for Sanctions, ECF No. 227, filed by Plaintiffs Nebraska Data Centers, LLC, and American Nebraska Limited Partnership, is granted;

4. The case titled *Khayet v. Cushing*, Case No. 8:18cv330, will be dismissed, with prejudice;

5. A separate order of dismissal will be issued, and a separate judgment will be entered, in Case No. 8:18cv330;

6. The Motion for Emergency Stay, ECF No. 247, filed by Defendant Leo Khayet, is denied;

7. The Clerk shall restrict public access to ECF Nos. 243 and 244; and

8. A separate judgment will be entered.

Dated this 5th day of September, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge